805 P.2d 1040

**Harry CAHN and Conrad R. Blain dba Cahn and Blain, Plaintiffs–Appellees,**

v.

**H. Richmond FISHER and Jane Doe Fisher; Francis P. Smith and Jane Doe Smith; dba Fisher and Smith, Defendants–Appellants.**

No. 1 CA–CV 89–167.

Court of Appeals of Arizona, Division 1, Department D.

July 12, 1990.

Review Denied March 5, 1991.

Fisher and Smith by Daniel J. Terrell, Francis P. Smith, Phoenix, for defendants-appellants.

Stanley M. Hammerman, Phoenix, for plaintiffs-appellees.

## OPINION

LANKFORD, Judge.

In this appeal, two lawyers challenge a summary judgment holding the defendant lawyers liable for the cost of deposition transcripts ordered by the lawyers from the plaintiff court reporters.

The lawyers claim that because they merely acted as agents for their client, and because they disclosed that they acted only in a representative capacity for an identified principal, only the client is responsible for the court reporters' charges.

The court reporters, on the other hand, claim that they contracted directly with the lawyers, who are therefore legally obligated to pay.

The superior court granted summary judgment for the court reporters in the amount of the invoices for the three transcripts involved, $579.95, plus costs and attorney's fees incurred by the court reporters in pursuing their claim. We affirm and issue this opinion to clarify lawyers' personal liability for expenses incurred on behalf of their clients.

I.

We view the evidence and inferences which can reasonably be drawn from the evidence in the light most favorable to the appellant on an appeal from a summary judgment. *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 725 P.2d 727 (App. 1986).

The appellant lawyers represented Pamela J. and James A. Schmillen in a litigated matter. In the course of this representation, the lawyers ordered three deposition transcripts from appellees Cahn and Blain. Although there is no direct evidence that the lawyers informed the court reporters that the lawyers were acting as agents in ordering the transcripts, or that the lawyers identified their principals to the court reporters, this fact might reasonably be inferred under the circumstances. The invoices were apparently for copies of depositions, suggesting that the court reporters had the caption of the case identifying the lawyers' clients when the lawyers ordered the transcripts. *See Petrando v. Barry*, 4 Ill.App.2d 319, 124 N.E.2d 85 (1955) (printer's knowledge of principal's identity could be inferred from cover of briefs). After the lawyers placed these orders, their clients filed for bankruptcy.

The court reporters billed $579.95 for the transcripts. The lawyers did not pay.

The court reporters filed a complaint in superior court against the lawyers seeking payment. The lawyers filed both an answer and a motion to dismiss for failure to state a claim and failure to join a necessary party. The court reporters responded to the motion to dismiss and filed a motion for summary judgment. The summary judgment motion asserted that the lawyers were responsible for the charges because they ordered the transcripts, and because the reporters intended to extend credit to the lawyers and not their clients. The reporters also offered an affidavit of a court reporter not involved in the lawsuit stating conclusorily that it is the "custom and usage" of court reporters in Maricopa County

to bill and extend credit to lawyers and not to their clients.

The superior court denied the lawyers' motion to dismiss and granted the reporters' motion for summary judgment. The lawyers appeal. We affirm.

## II.

■ The lawyers advance five arguments on appeal. First, they contend that under agency law, a lawyer as agent for a disclosed principal is not liable on contracts entered into on behalf of his or her client. Second, they contend that the formation of a contract cannot be proved by custom and usage. Third, the lawyers argue that a lawyer cannot be legally responsible for the client's expenses because the lawyer cannot ethically agree to pay a client's expenses. Fourth, the lawyers contend that their clients are indispensable parties to this action and thus that the superior court should have granted the lawyers' motion to dismiss. Fifth, the lawyers argue, for the first time on appeal, that an oral contract for payment of a client's expenses is unenforceable under the statute of frauds. *See* A.R.S. § 44–101. However, a party cannot raise new theories on appeal to seek reversal of a summary judgment. *Sullins v. Third and Catalina Constr. Partnership,* 124 Ariz. 114, 120, 602 P.2d 495, 501 (App. 1979). We therefore decline to address the appellants' fifth contention.

## A.

■ The lawyers argue that agency law protects an agent from liability on a contract entered into on behalf of a disclosed principal. It is true that, "[u]nless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." *Restatement (Second) of Agency* § 320 (1958). Disclosure of the principal requires that the agent give the other party both "notice that the agent is acting for a principal and of the principal's identity." *Id.* at comment a; *Mahan v. First Nat'l Bank,* 139 Ariz. 138, 677 P.2d 301 (App.1984). The burden of proving that the principal was disclosed rests with the agent. *Mahan, supra.*

■ It is also true that a lawyer is the agent of his or her client. *Green Acres Trust v. London,* 142 Ariz. 12, 688 P.2d 658 (App.1983), *vacated in part on other grounds* 141 Ariz. 609, 688 P.2d 617 (1984). As such, the rules of agency law generally apply. *Id.; Balmer v. Gagnon,* 19 Ariz. App. 55, 504 P.2d 1278 (1973). Among other things, an agent may employ other agents on behalf of the principal without becoming personally liable. *See Christensen, O'Connor, Garrison & Havelka v. State, Dep't. of Revenue,* 97 Wash.2d 764, 649 P.2d 839 (1982) (applying this analysis to lawyers who employed other lawyers and draftsmen to provide services for the disclosed client).

■ It is undisputed that the lawyers ordered the transcripts. The burden fell to the lawyers to show that they acted solely as agent for their disclosed clients.

Reasonable inferences can be drawn that the court reporters were aware that the lawyers were ordering the transcripts not for themselves but on behalf of their clients, and that the reporters were aware of the clients' identities. Under these circumstances, agency law precludes a judgment resting on the theory that lawyers are generally liable on a contract with court reporters. *See Morgan v. Krook,* 36 Ariz. 133, 283 P. 287 (1929) (affirming judgment for defendant lawyer).

Some courts have reached the contrary conclusion despite their acceptance of the rule that the agent is not liable on a contract entered into on behalf of a disclosed principal. These courts theorize that because the attorney is in charge of the litigation, he or she is directly responsible for payment of expenses incurred in connection with it. *E.g., Burt v. Gahan,* 351 Mass. 340, 342–343, 220 N.E.2d 817, 818–19 (1966). These courts also rely on the notion that the lawyers' liability is an "equitable" result. *Id.*

We disagree that there is one rule of law for principals and agents generally, and another for principals and agents who hap-

pen to be lawyers and their clients. There is no sound reason for such a distinction. The idea that lawyers are "in charge" of the client's business is no less true of many other agents, who may exercise a great degree of control over their principals' affairs.

### B.

 While the lawyers ordinarily would not be bound under agency law to a contract entered into on behalf of their disclosed principals, the parties to the contract were certainly free to agree otherwise. The parties were free to bargain away the general rule and agree that the agent would be liable. *Murphy v. Cain,* 711 S.W.2d 302 (Tex.Civ.App.1986).

In this case, the court reporters attempted to show that "custom and usage" between court reporters and lawyers is that the lawyers are directly liable for the reporters' fees. Court reporters might also be able to establish such liability by proof of a course of dealing between the parties. *See Theuerkauf v. Sutton,* 102 Wis.2d 176, 306 N.W.2d 651 (1981).

The lawyers argued below that the conclusory affidavit offered by the reporters was insufficient to show custom and usage. However, they abandoned that argument on appeal and we therefore decline to consider the sufficiency of the affidavit.

The lawyers do argue that custom and usage cannot be used to prove an acceptance, citing *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.,* 153 Ariz. 279, 736 P.2d 13 (App.1987). The lawyers characterize the issue here as their acceptance of the reporters' offer to extend credit for the transcripts.

The difficulty with this argument is that the issue here is not one of contract formation. There is no doubt that a contract was entered into between the lawyers and the reporters. The only question is the identity of the persons whom the parties intended to be the payor. Nor is the contract one for credit. Rather, it is a straightforward contract for sale of either goods (the transcript copies), or a service (the reporters' service in preparing the transcripts). The

fact that the parties did not expect payment contemporaneously with the delivery of the transcripts may be a term of the contract of sale, but it is of no particular significance here. The dispositive point is that the evidence of custom and usage was admissible to prove the identity of the persons making the promise to pay.

The evidence of custom and usage was uncontroverted. It showed that the parties' understanding was that the lawyers would be responsible for paying the reporters. This evidence fully sustains the superior court's entry of summary judgment against the lawyers.

### C.

 The lawyers also argue that a lawyer may not ethically agree to pay a client's expenses and thereby acquire a proprietary interest in the outcome of the case. Therefore, they argue, the superior court could not find that the lawyers agreed to pay the court reporters' fees. The lawyers rely on Rule 42, Rules of Professional Conduct, ER 1.8(e), which provides:

> (e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, *except that*
>
> (1) *a lawyer may advance court costs and expenses of litigation, provided the client remains ultimately liable for such costs and expenses;* and
>
> (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

(Emphasis added). *See In re Carroll,* 124 Ariz. 80, 85, 602 P.2d 461, 466 (1979); *In re Stewart,* 121 Ariz. 243, 245, 589 P.2d 886, 888 (1979) (both holding an attorney may not ethically advance living expenses to a client).

Contrary to the lawyers' assertion, however, this rule does not forbid a lawyer from entering into a contract obligating him to advance his clients' litigation expenses. That is in effect what is involved here, since the lawyers have the right to

charge their clients for amounts which the lawyers pay to court reporters. The lawyer's personal liability to the court reporter does not alter the fact that the client is ultimately responsible for the expense. If the client bears ultimate liability, the attorney's payment is an advance of litigation expenses. Such an advance is expressly permitted by ER 1.8(e)(1). The fortuity of the clients' eventual bankruptcy does not eliminate the clients' responsibility to pay the costs; the lawyers may pursue reimbursement as bankruptcy creditors. Moreover, the prohibition against champerty applies to the lawyer's conduct with regard to his or her client, and does not invalidate the lawyer's contract to pay a third party. *Theuerkauf, supra.*

We therefore reject appellants' claim that they cannot be bound by a contract with the court reporters because such a contract would violate ER 1.8(e).

### D.

The lawyers' final argument is that the clients are indispensable parties to this action. We disagree. The fact that the clients may bear ultimate responsibility to the lawyers, or are jointly responsible for the obligation to the court reporters, does not make them indispensable parties in the reporters' action against the lawyers.

Parties to a joint obligation are severally liable for the full amount of the obligation. A.R.S. § 44–141. Therefore, an action on a joint obligation can proceed against the parties either jointly or separately. *See generally* Rule 19, Ariz.R.Civ.P. (joinder rule). The lawyers' clients were not indispensable parties, and the superior court correctly declined to dismiss the court reporters' action.

### III.

The court reporters requested an award of attorneys' fees pursuant to A.R.S. § 12–341.01. The reporters are successful parties in an action arising out of a contract and thus are eligible for an award of attorneys' fees under paragraph A of that statute. The appellees are hereby directed to submit an application for fees in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Affirmed.

VOSS, P.J., and BROOKS, J., concur.