631 P.2d 129

The STATE of Arizona, Appellee,

v.

Mary Rose BROWN, Appellant.

No. 2 CA–CR 2053.

Court of Appeals of Arizona, Division 2.

May 14, 1981.

Rehearing Denied June 24, 1981.

Review Denied July 14, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Diane M. Ramsey, Phoenix, for appellee.

John D. Kaufmann, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was charged with manslaughter, or, in the alternative, criminal negligence and with four other counts. Found guilty by the jury of manslaughter and two other counts, conspiracy to commit criminal contempt and criminal contempt, she was sentenced to five years' imprisonment for the manslaughter conviction and to a six month term in the Pima County Jail on each of the other two counts, the terms to be served concurrently. She challenges the admissibility of certain pictures, the constitutionality of the manslaughter statute, the sufficiency of the evidence and giving of State's Instruction No. 12. We affirm.

Appellant ran a boarding home in Tucson. The state health department secured a court order which required appellant to cease providing care and lodging to a 98-year-old woman, Augusta Reidy, because she was in need of special nursing care which appellant was neither qualified nor capable of giving. Instead of obeying this order, appellant hid Mrs. Reidy in another building on the premises, putting an employee, a 17-year-old girl whom appellant had taken in and treated as her own daughter, Kathy Stratton, in charge of Mrs. Reidy. Due to the pitiful care that was given, Mrs. Reidy died of starvation.

## STATE'S INSTRUCTION NO. 12

The homicide statutes involved in this case are A.R.S. Sec. 13–1102, on negligent homicide, and 13–1103(A), on manslaughter. The former states that a person commits negligent homicide "... if with criminal negligence such person causes the death of another person." The latter provides that a person commits manslaughter by "Recklessly causing the death of another person ..."

One more statute is involved in this first issue. It is A.R.S. Sec. 13–201 which states:

"The minimum requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform a *duty imposed by law* which the person is physically capable of performing." (Emphasis added)

The theories of the defense were essentially two-fold: First, that Mrs. Reidy died of a heart attack and not from starvation, and second, that appellant had no connection with the care of Mrs. Reidy since she was being independently cared for by Kathy Stratton.

The trial court gave the following instruction on the issue of the duty, if any, owed by appellant to Mrs. Reidy:

"Before the Defendant can be found guilty of either negligent homicide or manslaughter, there must exist a legal duty owed by the Defendant to Augusta Reidy. Such a duty exists if any of the following conditions have occurred:

(1) The Defendant failed to obey a court order to cease providing case [sic] and lodging for Augusta Reidy, OR

(2) The Defendant agreed to provide care, shelter, and necessities to Augusta Reidy, OR

(3) The Defendant intentionally acted to prevent another person from taking action which the Defendant knew to be necessary for the aid or protection of Augusta Reidy, OR

(4) The Defendant permitted a person under her control to provide care, shelter and necessities to Augusta Reidy, knowing this person was unable to do so in the manner required to maintain the health of Augusta Reidy, OR

(5) The Defendant permitted a third person to use her business or premises while she was present, the Defendant had the ability to control this person, and the Defendant knew that it was necessary and possible to control this person in order to prevent harm to Augusta Reidy, OR

(6) The Defendant voluntarily took the custody of Augusta Reidy under circumstances such as to deprive Augusta Reidy of her normal powers of self-protection or to subject her to third persons likely to harm her and the Defendant knew she had the ability to control the third persons and knew of the necessity and opportunity for exercising such control."

Appellant contends that the giving of this instruction requires reversal because it permits her to be convicted of acts which are not crimes, fails to inform the jury of the necessity of causation, allows her to be convicted solely on the culpability of Kathy Stratton, allows conviction for violation of moral duties and is a comment on the evidence. We do not agree.

As stated in A.R.S. Sec. 13–201 and demonstrated by the case law, the failure to perform a duty imposed by law may create criminal liability. In the case of negligent homicide or manslaughter, the duty must be found outside the definition of the crime itself, perhaps in another statute, or in the common law, or in a contract. The most commonly cited statement of the rule is found in *People v. Beardsley*, 150 Mich. 206, 113 N.W. 1128 (1907):

"The law recognizes that under some circumstances the omission of a duty owed by one individual to another, where such omission results in the death of the one to whom the duty is owing, will make the other chargeable with manslaughter.... This rule of law is always based upon the proposition that the duty neglected must be a legal duty, and not a mere moral obligation. It must be a duty imposed by law or by contract, and the omission to perform the duty must be the immediate and direct cause of death. (citations omitted)" 113 N.W. at 1129.

In *Jones v. United States*, 308 F.2d 307 (C.A.D.C.1962), the court stated:

"There are at least four situations in which the failure to act may constitute breach of a legal duty. One can be held criminally liable: first, where a statute imposes a duty to care for another; second, where one stands in a certain

status relationship to another; third, where one has assumed a contractual duty to care for another; and fourth, where one has voluntarily assumed the care of another and so secluded the helpless person as to prevent others from rendering aid." 308 F.2d at 310.[1] LaFave and Scott, in their work, suggest three other duties: The duty based upon creation of the peril, the duty to control the conduct of others and the duty of a landowner to act affirmatively to provide for the safety of those whom he invites on to his land. LaFave and Scott, Criminal Law, Sec. 26 (1972).

█ The instruction imposes liability on appellant for her own conduct, not for the conduct of another. Other instructions adequately covered the issue of causation and it was not necessary to include that issue in this instruction, which was concerned solely with the issue of duty.

█ Appellant contends that paragraphs 4 and 5 of Instruction No. 12 are concerned with moral duties and not legal duties. We do not agree. Paragraph 5 is taken from Sec. 318 of the Restatement (Second) of Torts. As the comment to this section notes, the mere fact that the possessor of land permits a third person to conduct an activity on the land is not regarded as sufficient to make the possessor liable for the manner in which the third person carries on the activity. It is sufficient, however, to require the possessor to exercise with reasonable care the ability which possession gives him to control the third person's activity when he knows or should know that its exercise is necessary to prevent harm to others. The rule is applicable where the possessor of land is present and the land is being used or the activity is being carried on with his permission, and when, therefore, he has not only the ability to control the conduct of the third person as possessor, but also the opportunity to do so.

Cf., *Korenak v. Curative Workshop Adult Rehabilitation Center*, 71 Wis.2d 77, 237 N.W.2d 43 (1976).

█ Paragraph 4 of the instruction merely sets forth the duty of a master to control the servant. It cannot be argued that this imposed a mere moral duty and not a legal one.

█ Appellant contends that the instruction constitutes a comment on the evidence because of the trial court's use of the words "must find." The instruction contains no such words and does not constitute a comment on the evidence.

█ Appellant contends that the trial court erred when it admitted into evidence photographs of the victim's body. We do not agree. Photographs, even though they may be gruesome in nature, are admissible to illustrate how the crime was committed and to aid the jurors in understanding the testimony. *State v. Clark*, 126 Ariz. 428, 616 P.2d 888 (1980). Here, all of the state's doctors used the photographs to explain to the jurors how they determined the time and cause of Mrs. Reidy's death. It is clear that the trial court did not abuse its discretion in admitting the photographs into evidence.

█ Appellant finally contends that A.R.S. Sec. 13–1103(A)(1) is unconstitutionally overbroad and vague. While her attack is couched in terms of constitutional law, her claim is actually based on the insufficiency of the evidence, to-wit, that there was no evidence that appellant had the requisite mental culpability. We do not agree with this contention. The evidence in this case is sufficient to support a conviction and appellant's claim that the conduct of Kathy Stratton was a supervening, intervening cause, as a matter of law, is without merit.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.

1. Accord, *People v. Lilly*, 71 A.D.2d 393, 422 N.Y.S.2d 976 (1979). See also, *People v. Lynch*, 47 Mich.App. 8, 208 N.W.2d 656 (1973); Annot., "Homicide: Failure to Provide Medical or Surgical Attention," 100 A.L.R.2d 483; Annot., "Homicide by Withholding Food, Clothing, or Shelter," 61 A.L.R.3d 1207; 40 Am.Jur.2d, Homicide, Secs. 88–90; 2 Wharton's Criminal Law (14th ed.) Sec. 172.